183 So.2d 145 (1966)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, James F. Blackwell and Mrs. Sidney R. Blackwell, Plaintiffs-Appellees,
v.
NIAGARA FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 6487.
Court of Appeal of Louisiana, First Circuit.
January 24, 1966.
Rehearing Denied February 28, 1966.
Writ Refused April 15, 1966.
*146 Maurice J. Wilson, of Breazeale, Sachse & Wilson, Baton Rouge, for appellant.
Horace C. Lane, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
ELLIS, Judge.
This litigation arose out of an automobile accident which occurred May 9, 1963, at 7:30 A.M., at the intersection of Foster Road (also known as Louisiana Highway #423) and Green Acres Drive. Foster runs generally north and south and Green Acres runs generally east and west. The intersection was an uncontrolled "T" intersection, Green Acres terminating at Foster.
Mrs. Sidney R. Blackwell was alone, proceeding west on Green Acres and driving a 1962 Volkswagen owned by her husband, James F. Blackwell. Mr. William B. Garrett, accompanied by his wife, was traveling north on Foster in his 1960 Pontiac which was insured by the defendant. A collision occurred between the two vehicles in the exact center of Foster, the front of the Pontiac striking the left side of the Volkswagen.
Extensive damage was sustained by the Pontiac and the Volkswagen was a total loss. By stipulation counsel agreed that if a judgment in favor of plaintiff were granted it should be for the maximum recoverable amount under the policy, which is $5,000.00 for bodily injury and $50.00 deductible property damage.
After trial on the merits the lower court found Mr. Garrett negligent and Mrs. Blackwell contributorily negligent but awarded judgment in favor of plaintiff on a finding that the insured had the last clear chance to avoid the accident.
In substance, the defendant testified that he was proceeding at the lawful rate of 40 miles per hour and observed plaintiff proceeding at about 10 miles an hour and approaching the intersection about 50 feet distant therefrom while plaintiff was still approximately 120 feet or further from the intersection. According to the defendant, his first impression was that plaintiff's slowly moving vehicle would stop but he instantly realized plaintiff would not stop and thereupon sounded his horn and applied his brakes and skidded a distance of 90 feet. The evidence of the Trooper as well as that of plaintiff and defendant placed the point of impact in the exact center of the intersection. Plaintiff's testimony is to the effect that she observed defendant's oncoming car when she heard his horn sound, looked up and saw him about 100 feet distant. She nevertheless proceeded to make her turn and as she started to turn to the left, she noticed the defendant's car then about 50 to 75 feet away veering slightly to the left at which time she realized an impact was imminent and tried to avoid a collision by steering her car to her right in an effort to get out of the way.
Nothing except the skid marks seems to indicate that defendant was proceeding at an unreasonable rate of speed although from the physical evidence it might be concluded defendant was traveling something in excess of the lawful speed of 40 miles per hour. In this respect the investigating officer testified that in his opinion defendant's statement that he was traveling 40 miles per hour appeared reasonable.
Appellant cites as error the finding of the lower court that Green Acres had the right-of-way in this situation over Foster *147 and the determination that Garrett had the last clear chance to avoid the accident.
The first alleged error concerns the negligence vel non of Garrett in that if Mrs. Blackwell had the right-of-way the former was negligent in failing to yield it when he observed the Volkswagen approaching the "T" intersection on his right. Appellant argues that Foster Road had the right-of-way because it has considerably more traffic than Green Acres and was respected as a favored street by the general public. There is no question but that Foster Road was designated as a state highway (Louisiana Highway #423) and was heavily traveled whereas Green Acres Drive was an insignificant street coming from a residential subdivision which formed a "T" intersection with Louisiana Highway 423. This same argument was made in Pardue v. Norred, La.App., 95 So.2d 363, and rejected by the Second Circuit with the following language at page 365:
"The argument is not sound. The uncontradicted evidence shows Michigan Avenue has never been designated as a favored street by authorization of municipal ordinance of the Town of Jonesboro, and, therefore, under the provisions of LSA-R.S. 32:237, subd. A, of the State Highway Regulatory Act where neither of the two streets or highway is by municipal ordinance given the right-of-way over the other, the vehicle approaching the intersection from the right has the right-of-way over a vehicle approaching the intersection from the left. Brazzel v. Farrar, La.App.1952, 61 So.2d 517; National Retailers Mutual Insurance Company v. Harkness, La.App.1954, 76 So.2d 95. It is admitted Pardue was traveling north and Norred west as the two vehicles entered the intersection; consequently Norred was driving the vehicle approaching the intersection from the right, and was entitled to the right-of-way."
With regard to right-of-way, the defendant cites McMorris v. Webb, La.App., 67 So.2d 146, which involved a defendant proceeding southerly on a street which formed the leg of a T intersection and being in collision with plaintiff who was proceeding westerly on the other highway. Although the defendant was approaching from the right and there were no stop signs or other designation of superiority, the court held that the road upon which plaintiff was traveling was the main road and, accordingly, plaintiff was accorded the right-of-way. No mention was made regarding the directional right-of-way law which should have applied because neither road was designated a superior roadway by any lawful authority.
In the case of Trahan v. Lantier, La.App., 33 So.2d 136, again plaintiff who was approaching from the left was deemed to possess the right-of-way because he was on a main road. Defendant did not raise the question of directional right-of-way even though defendant was approaching from the right but claimed only he had preempted the intersection.
In Dickinson v. Long Springs Lumber Co., La.App., 32 So.2d 407, this decision merely states that plaintiff's car (which was approaching defendant from the left) enjoyed the right-of-way over traffic on a side road over which defendant's vehicle was proceeding. The opinion does not show whether or not defendant was faced with a stop sign or how and by what authority the road upon which plaintiff was traveling had been designated the main highway. It appears defendant made no contention he was entitled to directional right-of-way but again relied upon pre-emption and stated that he stopped at the intersection and entered only after ascertaining that plaintiff's car was so far distant he reasonably felt he could proceed without incident.
In the last case, Butler v. O'Neal, La. App., 26 So.2d 753, Highland Avenue upon which plaintiff was proceeding has the *148 right-of-way over intersecting Herndon Street by virtue of defendant's admission he was faced with a stop sign before entering Highland Avenue.
A check of the Louisiana Highway Regulatory Act, R.S. 32:1(57), reveals that a "through highway" is therein deemed to mean every highway on which vehicular traffic is given preferential right-of-way AND AT THE ENTRANCES TO WHICH VEHICULAR TRAFFIC FROM INTERSECTING HIGHWAYS IS REQUIRED TO YIELD THE RIGHT-OF-WAY TO VEHICLES ON SUCH THROUGH HIGHWAY in obedience to either a stop sign or yield sign WHEN SUCH SIGNS ARE ERECTED AS PROVIDED IN THIS CHAPTER.
R.S. 32:121(B) provides that when two vehicles entering an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the highway to the vehicle on the right. Par. (C) of Section 32:121 also provides that the right-of-way rule declared in Section (B) is modified at through highways and otherwise as hereinafter stated.
R.S. 32:123 is a modification of the directional right-of-way conferred in Section 32:121(B) in that Section 32:123 provides that a preferential right-of-way may be indicated by stop or yield signs which a motorist must honor irrespective of whether he be approaching from the left or right.
The quoted sections of the Regulatory Act seem to be all that bear upon the question of right-of-way and, according to Section 32:1, Par. (57), a through highway does not become a through highway irrespective of the volume of traffic unless it is favored by municipal ordinance or by a stop or yield sign erected by an authorized agent or employee of the Highway Department.
The jurisprudence and the provisions of the Louisiana Highway Regulatory Act support the proposition that if there is no sign, the motorist from the right enjoys the right-of-way irrespective of the volume of traffic on the other highway or, in other words, the volume of traffic is immaterial so long as the traffic on the intersecting road is not required to yield by the presence of a stop or yield sign.
On the question of right-of-way, we have to admit that while we think it is a purely ridiculous and absurd situation that a street coming from a residential subdivision and forming a T intersection with a state highway possesses the right-of-way under the directional right-of-way statute now in force, we can reach no other result except that Mrs. Blackwell possessed the right-of-way under the statute. This is a matter that addresses itself to the legislative branch of our state government. Therefore, Garrett was negligent in that he failed to yield the right-of-way to Mrs. Blackwell.
We concur with the trial judge in his finding that Mrs. Blackwell was contributorily negligent. If Mr. Garrett saw her when she was still 50 feet from the intersection, there is no excuse for Mrs. Blackwell not having seen Garrett prior to her entry into the intersection. Even though she had a legal right-of-way she is charged with seeing what she should have seen, and is not allowed to rely on her right-of-way when it appears that the right of way is not going to be granted by approaching traffic. Had plaintiff Blackwell seen Garrett when she should have, she would have realized that he was approaching the intersection at an undiminished speed of 40 miles per hour and that she was about 50 feet from the intersection traveling from 15 to 10 miles per hour. Mrs. Blackwell could possibly have speeded up and exercised her right-of-way, or she could have stopped and allowed Garrett to pass. She was not under a duty to do either, as she had the right-of-way. However, she cannot, relying on that fact, place herself in the path of oncoming *149 traffic at a time when it appears that the oncoming traffic is not in fact going to yield the right-of-way. This is what she did and this is contributory negligence.
We cannot concur with the trial judge in his finding that Garrett had the last clear chance to avoid the accident. The requirements for bringing a case within that doctrine are clearly set out at page 485 of Gisclair v. Security Insurance Company, La.App., 171 So.2d 483, as follows:
"It is elementary that there are three elements necessary to support the doctrine of last clear chance, namely (1) that the plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered, or was in a position where he should have discovered, plaintiff's peril; (3) at the time defendant could have, with the exercise of reasonable care, avoided the accident."
We do not believe that the third criterion, namely, that the defendant could have avoided the accident, is present and that, in effect, what we have here is the contributory negligence of both persons continuing to the moment of impact with neither driver having the opportunity to avoid the collision.
Considering all the testimony and the physical facts, we believe that Garrett was proceeding at a reasonable rate, that he did have his car under proper control, that he did timely observe plaintiff's presence and when he realized that plaintiff was in fact going to proceed into the intersection, he did everything within his power to avoid the accident.
The only possibility of negligence by the defendant Garrett would be that he was exceeding the speed limit and even this does not appear with certainty. Assuming, however, defendant was negligent, his excessive speed was no more a contributing factor than was plaintiff's negligence in proceeding into the intersection in the path of defendant's automobile.
It would appear that this case is somewhat similar to Florane v. Conway, La. App., 111 So.2d 149, wherein plaintiff's truck was struck as it blocked the highway. The court found that plaintiff was negligent in that he should have moved his truck and also found defendant negligent in traveling at an excessive rate of speed. The court further found, however, that when defendant should and did discover the presence of plaintiff's truck, he could not stop because of his speed and the condition of the highway and, therefore, defendant did not have the last clear chance to avoid the accident.
Also, in Johnson v. Wilson, 239 La. 390, 118 So.2d 450, where both parties were guilty of negligence continuing to the moment of the accident and at the time each discovered or should have discovered the other's peril, it was too late to avoid the accident, the court held the doctrine of last clear chance did not apply. See also McCallum v. Adkerson, La.App., 126 So. 2d 835.
In short, we do not believe that the defendant had any more chance than the plaintiff to avoid the accident. The defendant saw plaintiff as soon as could be expected of any reasonable, prudent driver and immediately upon realizing plaintiff's peril did everything within his power to avoid the accident. We find both plaintiff and defendant were guilty of contributory negligence and that the latter did not in fact have the last clear chance to avoid the accident. For the above reasons the judgment of the District Court is reversed and plaintiff's suit dismissed.
Reversed.